JUDGE LINDSAY
pelivered the opinion op the court.
Under and by vii’tue of the fifteenth section of an act of the General Assembly, approved February 24, 1869, entitled “An act to incorporate the Cumberland & Ohio Railroad Company,” the,County Court of Washington County submitted to the qualified-voters of that county a proposition to subscribe for four hundred thousand dollars of the capital stock of said company. A majority of those voting pronounced in favor of the proposition. The county judge afterward refused to make the contemplated subscription for stock, and upon application by the railroad company the circuit court awarded a mandamus compelling him to make the subscription, and to issue and deliver in payment thereof the bonds .of the county. Upon an appeal to this court the judgment awarding the mandamus was affirmed.
*567 In obedience thereto the county judge, acting for and in behalf of the county, made the subscription, and proceeded to issue, and did issue and deliver to the company, the bonds of the county, to an amount slightly exceeding one hundred thousand dollars. He then refused to deliver the bonds necessary to pay the balance due and’ owing by the county on the subscription, and thereupon the company instituted in the circuit court a supplemental action, in which it set up such refusal, and prayed a peremptory order requiring the county judge to fully execute the original judgment by issuing and delivering the bonds of the county to the full amount of the capital stock subscribed for.
As matter of defense to this supplemental action the county judge states:
First—That since the affirmance of the judgment awarding the mandamus, and since the subscription for stock was made and a number of bonds issued and delivered, Uriah Shumaker and divers other tax-payers of Washington County instituted their action in equity in the Washington Circuit Court; that he was made a party defendant to that action, and was by an order of injunction therein obtained enjoined and restrained from proceeding further to deliver to the company the bonds of the county in payment of its subscription for stock, and that said order of injunction still remains in full force and effect.
Second—He alleges that neither the company nor its president nor its directors, nor any of them, have executed to Washington County the bond required in such cases by the provisions of “An act for the protection of counties, cities, etc., subscribing for stock in railroads, turnpikes, and other improvements.” (General Statutes, p. 843.)
Upon hearing, the circuit court refused the relief asked by the railroad company, and dismissed its petition; and from that judgment this appeal is prosecuted.
*568 The company was not made a party to the suit of Shumaker and his associates, and they neither enjoined nor sought to enjoin it from enforcing the mandamus that had been awarded in its favor. Upon its own motion appellant was made a party defendant to their suit; but afterward the action was removed by change of venue to the Boyle Circuit Court, and that court, upon the motion of the plaintiffs, set aside the order making it a party. But it thereafter made an order requiring them to make it a party; whereupon they amended their petition, and upon various grounds, and for numerous reasons stated at length, they asked the court to render a judgment declaring the charter of the company forfeited, and depriving it of all such rights, privileges, and franchises as it may have theretofore'possessed; but they fail to ask that it shall be restrained from proceeding to have the judgment in the Washington Circuit Court awarding the mandamus enforced against the county judge.
In response to a rule against them to show cause against being required to execute to the company a bond of indemnity on account of their injunction against the county judge, the plaintiffs insist “ that the said railroad company is not enjoined from doing any thing, or the performance of any act they have power to perform; ” and that in view of that fact the company has no right to demand the execution of the bond.
This branch of appellee’s defense presents this state of case.He (the county judge) is enjoined and restrained from obeying a writ of mandamus awarded against him by a court of competent jurisdiction, while the party plaintiff in the action in which the mandamus was awarded is left free to insist that it shall be enforced.
The order of injunction interposes no obstacle to the power of the circuit, court to enforce compliance with its judgment. It is not addressed to that court, and does not affect to *569 interfere with it. The chancellor does not assume to have power' to inhibit the common-law court from exercising its jurisdiction to enforce its own judgments; and even if he so assumed, he does not in this case attempt to exercise any such power.
That Shumaker and his co-plaintiffs, upon the presentation of a proper state of case, might have obtained an injunction prohibiting the railroad company from enforcing its judgment against the county judge is not denied; but appellant insists that as they have left it free to ask the enforcement .of its judgment, and as the circuit court has the undoubted power to afford it the relief asked, it should not be turned out of court because the public officer directed by that judgment to do and perform certain ministerial acts has been enjoined and restrained at the suit of third parties from yielding obedience to the mandamus. Upon the other hand, the county judge claims that the peremptory order to issue and deliver the bonds should not be made, because he can not obey it without disobeying the order of injunction, nor refuse to obey it without committing a contempt of the circuit court; and he insists that no steps should be taken to enforce the mandamus until the matters in litigation in the suit pending in the Boyle Circuit Court shall be finally disposed of.
A peremptory mandamus against the commissioners of Wyandotte County to compel them to subscribe for stock in the Ohio & Indiana Railroad Company was refused by the Supreme Court of Ohio, upon the ground that before the application therefor was made the commissioners, at the suit of certain tax-payers of the county, had been perpetually enjoined from making the subscription. The court holding that although the railroad company was not a party to the suit, and not bound by the judgment therein, still it was precluded from having relief afforded it through the peculiar remedy of a writ of mandamus. (Ohio & Indiana *570 Railroad Company v. Commissioners of Wyandotte County, 7 Ohio St. 278.)
In Ex parte Fleming (4 Hill, 582) the Supreme Court of New York refused a peremptory mandamus to compel an inferior court to enforce its own judgment, upon the ground that the judge thereof had been enjoined and restrained from enforcing it by the judge of the District Court of the United States, the court saying that “ it is true that courts of law do not hold themselves restrained by injunction from proceeding, nor should any officer be thus restrained while acting as a judge. But no court ought to compel either judicial or ministerial officers to put themselves in positive conflict with the writ or orders of another court.” Said court further held that “the mandamus is a prerogative writ, which we have the power to issue or withhold, according to our own discretion • and, independently of other questions, it would be very indiscreet to place the judge between two fires, as we should do by granting the motion.” This was the substantial reason given by the Supreme Court of Ohio for refusing the mandamus against the commissioners of Wyandotte County-.
It is to be observed that in these cases, and in fact in all the cases to which our attention has been called, the courts of equity had obtained jurisdiction, and orders of injunction had been sued out before the mandamus was asked for, and in this material point they each and all differ from the case under consideration.
Under our system of procedure we have no other than peremptory writs of mandamus. Instead of the alternative writ, the plaintiff, upon his petition and notice, moves at once for a peremptory mandamus, and thereupon the court hears and determines all questions of law and fact arising on the motion, and the order granting or refusing the mandamus is the final order in' the proceeding. (Sections 523 and 524, Civil Code of Practice.)
*571 The mandamus awarded in the action of the railroad company against the county judge was peremptory in its nature. It left that officer no discretion whatever. He was bound to proceed at once to execute the judgment of the court. The moment he refused obedience he was guilty of a contempt, and was liable to be proceeded against by attachment.
The supplemental proceeding was, in effect, merely a rule against the county judge to show cause why he should not be attached for disobedience to the mandamus.
The fact that an order of injunction is in full force against a party about to be attached for disobedience to a mandamus might, and in many cases would, afford a reason for delay in resorting to the process of attachment; but such fact can not justify a court of law in absolutely refusing to enforce its own judgment. As we have already seen, courts of equity do not claim to have power to enjoin courts of law from -proceeding to judgment in actions in which they have jurisdiction, nor from enforcing by appropriate process the judgments they have jurisdiction to render. Having no such powers, courts of equity can not accomplish the same end by seizing and punishing an officer who, as in this case, is being used as the mere instrument by which the court of law is enforcing its judgment. If the Boyle Circuit Court can rightfully operate upon and control the 'action of the county judge by and through its writ of injunction, it will thereby as effectually enjoin the Washington Circuit Court as if its process had been directed to and served upon the judge of that court.
We must assume that if the county judge had at once made application to the Boyle Circuit Court to be relieved from the novel attitude in which the order of injunction sued out by Shumaker and others had placed him, the injunction would have been dissolved as to him at once, or else he would have been protected against the consequences that might otherwise follow obedience to it, by the chancellor compelling the *572 plaintiffs to enjoin the railroad company from proceeding to enforce the mandamus against him.
But it appears that the process in the suit of Shumaker, &c., was served on the county judge on the 4th day of April, 1873, and that up to the 6th day of March, 1874, he had not answered nor taken any steps whatever to relieve himself from the embarrassing attitude in which the order of injunction had placed him. Under such circumstances he could not claim even indulgence, either at the hands of the railroad company or of the circuit court; and as the company had not been enjoined from enforcing the mandamus, and as the circuit court had the undoubted right to compel obedience to it, the existence of the order of injunction interposed no legal obstacle to the granting of the relief sought in the supplemental action.
This conclusion renders it necessary that the provisions of the act of the 9th of April, 1873, shall be considered. Notwithstanding the inartificial'.manner in which that act is drawn, and the want of accuracy and precision in the language in which it is couched, we see no insuperable difficulty in the way of ascertaining the intention of the legislature. The preamble sufficiently indicates the evils intended to be remedied, and the means provided can be understood and applied.
The corporation or the person by whom a railroad, turnpike road, or other public improvement is being constructed, before receiving the money or bonds of a county, city, town, or precinct that may have been voted or appropriated to the construction of any such improvement, is required to execute to the commonwealth a bond with good security, conditioned that such corporation or person will honestly and faithfully appropriate the money or bonds delivered to the object for which such money or bonds may have been voted or appropriated. To the extent that the bonds required by this act will *573 indemnify counties, cities, towns, and precincts against the application to other than the purposes intended the bonds or money that they have voted or appropriated to the construction of a public improvement, it will make them preferred holders of stock in the corporation engaged in the construction of such improvement; and although their stock may be rendered worthless by the misapplication of their money, or by its loss through the dishonesty of irresponsible officers to whom it may be intrusted by the corporation or person to whom it is paid, they may recover it back by suits upon the bonds required to be executed for their benefit and protection.
But a careful consideration of the act satisfies us th.at it can not be applied to the contract of subscription entered into by the county of Washington and the railroad company. Long anterior to its passage the contract between the county and the company had been perfected and completed. The company was entitled to demand the bonds of the county to an amount equal to the stock subscribed for, and its rights in this regard were absolute and unconditional.
If it can now be required to execute the bond provided for by the act in question, it is because that act has the force and effect of injecting into what was before its passage a perfect and complete contract a condition materially affecting the obligations thereof, and imposing upon one of the parties without its consent a duty not contemplated by either at the time the contract was entered into, and this will have been done after a court of competent jurisdiction has determined the rights of the parties, and is actually engaged in enforcing those rights.
But it is claimed that under the reservations of power contained in the act of February 14,1856, the legislature has full and complete power to so amend the charter of the company as to accomplish the result indicated. We need not discuss the power of the legislature under the provisions of that act. *574 The existence or non-existence of the power claimed for it byappellee is a matter of no importance, so far as the questions involved in this controversy are concerned. It is manifest that the act of April 9, 1873, is not and was not intended to be understood as an amendment to the charter of that or any other corporation.
It is a general law applicable to all persons and corporations coming within its provisions, and may be enforced in all cases in which a county, city, town, or precinct has voted' or appropriated money or bonds to the construction of a railroad, turnpike road, or other kindred public improvement, unless before its passage the contract between the person or corporation and the county, city, town, or precinct had been fully consummated. (Aspinwall v. Commissioners of Daviess County, 22 How. U. S. Supreme Court Rep. 364.)
But it has no application in this case, because before its passage the subscription for stock had been made; the contract had become binding upon the county, on the one side, to take the stock and pay the bonds, and upon the company, on the other, to issue to it the certificates of stock and accept the bonds in payment of the subscription.
Whatever may be the power of the legislature to pass retroactive laws, there is a rule of construction of universal application by which all laws must be tested, before the courts will hold them to be retroactive in their operation, and that is that no statute, however positive it may be in its terms, will be construed as designed to interfere with existing contracts, unless such intention is expressly declared; and courts will ápply new statutes only to future cases unless there is something in the very nature of the case or in the language used which shows that they were intended to operate retroactively. (Potter’s Dwarris on Statutes and Constitutions, page 162, note 9; Cooley’s Constitutional Limitations, 370, and authorities cited.)
*575 . Tested by this rule of construction, it is plain that this act was intended to apply to contracts not fully consummated at the time of its enactment.
There is another view of this question which it is proper that we shall notice. It was urged in argument that the statute merely gives to the county the protection or indemnity to which in equity it would be entitled, independent of its provisions.
We do not doubt that a state of case might be presented to a court of equity that would authorize its interposition in behalf of the county, and we are not prepared to say that in such a case a court of law might not refuse the character of relief here sought against the county until the company had properly secured the appropriation of the bonds or their proceeds in exact accordance with the terms of the subscription. But no such case is presented by the answer of the appellee. He does noé intimate that the corporation has violated or is about to-violate its trust in the general application of its funds, or that the proceeds of the bonds received from Washington County have not been applied in the manner stipulated for in the contract of subscription, nor that he has reason to fear or does fear a misapplication of the proceeds of the bonds now demanded.
Upon the whole case, we are satisfied that the circuit court erred in overruling the demurrer to the appellee’s answer, and also in dismissing appellant’s petition.
The judgment is reversed, and the cause remanded with instructions to sustain the demurrer to appellee’s answer, and for further proceedings consistent with this opinion.