CUMBERLAND & OHIO R. CO. *v.* WASHINGTON COUNTY COURT, ET AL.

**Mandamus—Res Adjudicata.**

Where, in an action against the county judge to mandate him, as an officer, to subscribe for the county to the capital stock of a railroad company and issue the bonds of the county in payment, the judge and the county are defeated, after which citizens, as taxpayers, brought an action to prevent such subscription and issue of bonds, a plea of res adjudicata should be sustained, as the termination of the first suit against the county settles the rights of the parties and bars the second action.

Estoppel.

> A corporation is as much bound by an estoppel as an individual. Where a railroad company, to which a county has voted to subscribe a large amount of stock, and such stock has been subscribed by the county judge but bonds of the county have not been issued, and it is made to appear to the chancellor that the company is insolvent, its enterprise a failure, and that it is unable to complete the road such a distance as would inure to the benefit of the people of the county making such subscription, an injunction will issue to prevent the issue of the bonds of the county; but the chancellor should have reserved the right to permit the issuing of the bonds whenever it is made to appear that there is a reasonable probability of the money being raised to complete the road.

### APPEAL FROM GARRARD COUNTY COURT.

*November 8, 1877.*

Opinion by Judge Pryor:

In the proceeding against the judge of the Washington County Court by mandamus to compel him to subscribe in behalf of Washington county $400,000 to the capital stock of the Cumberland & Ohio Railroad Company, and that he be required to issue bonds in payment of the subscription, all the matters by the county judge in defense of that proceeding by the railroad company are now relied on by the present appellee, as affording sufficient grounds for the interference of the chancellor to grant the relief sought. In order to defeat the application for the writ or the relief sought by it, the county judge interposed various defenses, among them the validity of the election upon which depended his right to make the subscription, the failure of the company to organize as required by the charter, its failure to locate the road as required by the terms of subscriptions and as represented by the friends of the road at the time the vote was given, etc. All these defenses are identical with many of the grounds set forth in appellant's petition, and the questions must be regarded as res adjudicata.

The judge of the county court having failed to make a successful defense, it is now insisted that the present appellants, who are citizens of Washington county and tax-payers, are not estopped from urging the same matters as the foundation for a perpetual injunction against the company from receiving, or the county judge from issuing, the bonds; that the action of the county judge was purely ministerial and constitutes no bar to the prosecution of an action by the citizen making the complaint. If the county judge had issued the

bonds this action would have been ministerial only; still his defense is binding upon the county and tax-payers.

It was made the duty of the county judge to subscribe this stock, and to issue the bonds upon a certain contingency, namely: The vote by the people in favor of the subscription as proposed. When applied to by the company to make the subscription, the response by the county judge in behalf, not only of himself, but the tax-payers of the county, was that the county agreed to subscribe stock upon certain conditions, and those conditions not being complied with, he had no authority to make the subscription. This issue was then litigated between the county judge and the company, and this court, as well as the court below, judicially determined that the subscription should be made.

The county judge was the officer designated by law to perform this ministerial duty, and in resisting the application of the company requiring him to make the subscription he represented the entire tax-paying population of his county. It was in fact a proceeding against each and all tax-payers in the county, represented by the county judge in his representation, and the judicial finding against him is binding on the entire county. If the company was invested with the right to have the stock subscribed it was entitled to the remedy afforded by law to compel the subscription, and the party required by law to make it was the one against whom the proceedings should have been instituted, and not the individual citizen. The proceeding, therefore, against the county judge was proper, and an action could have been maintained against the tax-payer.

Nor is it material that the questions made by the county judge and the present appellants are not in every respect identical. In the mandamus case against the county judge one of the grounds of defense was that the votes of a majority of the voters were obtained by fraud and misrepresentation, and in the case before us it is alleged that the election was held and conducted by persons not authorized by law to hold elections, and therefore it is maintained that, the defenses being different, the defense of the county judge works no estoppel. While we are inclined to the opinion that any evidence touching the validity of the election might have been admitted (if such evidence were at all competent), under the defense made by the county judge, still it may be conceded that the defenses are unlike, and still it must be admitted that the defense could have been made by the county judge, and if so it works an estoppel upon all the parties in interest. Any other rule would render this character

of litigation interminable, and result in allowing the other tax-payers, who are not parties to the present action, to make any defense that might be omitted by the present appellants. The judgment of the circuit court affirmed by this court, awarding the mandamus, was final; and the defense having been made by the county judge, who was the proper and only representative of the county, must be held conclusive as to all matters of defense arising or in existence prior to the proceeding. Herman on Estoppels, p. 87.

A corporation is as much bound by an estoppel as an individual, and in this case the chief officer of the county, the county judge, was vested with the authority to subscribe, and this pre-supposes the right on his part to defend against the action of the company in demanding the subscription to be made by him, before complying with the law under which the authority to subscribe is conferred.

At the February term of the court below an amended petition was filed by the appellees, in which it is alleged that the president of the railroad company had obtained possession of coupons upon unissued bonds to the amount of $31,000; that these coupons had been exchanged for iron, and the iron taken to Lebanon for the purpose of using it outside of Washington county in violation of the terms of subscription; that the company had no available subscriptions sufficient to construct the road, or so much of it as to be of any practical benefit; that it is wholly out of the power of the company to complete the road, or any part of it; that the whole enterprise is a failure, and if the bonds are issued and sold it will result in an entire loss of the subscription made by the county of Washington; that if the bonds are issued and sold the money will be misappropriated and the company has already violated the trust reposed in it by misapplying part of the funds subscribed. Upon these statements and the additional allegation of insolvency an injunction was granted prohibiting the issual of the bonds subscribed. The subscription voted for by the voters of Washington county was a conditional subscription, as is evidenced by the following order made the basis of the submission of the question to the popular vote:

"It is further ordered that said subscription shall be made only on condition that said road shall run as near as practicable through the body of Washington county, and within one-half mile of the town site of Springfield, and that the said sums raised by said subscription shall be expended in Washington county."

The appellant, in its answer, concedes that it has no available means for completing the road, but hints that with prudent manage-

ment and the prompt payment of the subscriptions made a sufficient sum of money can be obtained to secure the success of the enterprise. There is an attempted denial of the statement that the company has expended the proceeds of the coupons for iron with a view of using it on other parts of the road than in Washington county, but a careful reading of the answer, as well as the proof in the case, conduces to show that this charge is true and in fact admitted. It is maintained by the company that by the terms of the subscription the principal of the bonds is to be applied in the construction of the road through the county, but, as to the coupons or interest accrued and to accrue, it has the right to apply it in payment for work or material done or performed on any other part of the road.

The testimony in the case established the fact that the entire work on the road has been suspended for want of means and with no prospect of increasing the fund by additional subscriptions. An expenditure of near one million of dollars, after exhausting all of the available resources of the company, will have to be made in order to complete the road from Eminence, in Henry county, to Greensburg, in Green county, a distance of ninety-six miles, and by the report of one of the engineers it will require six millions of dollars to complete the road from Nashville to the short line road in the county of Henry. The appellees, upon their presentation of the case as to the condition of the work and the means necessary to complete it, connected with the declaration by the chief officer of the company that the object in obtaining the bonds is to place them on the market, ask the chancellor to interfere by injunction and prevent the issual of the bonds. An order was entered by the court below requiring the appellant to execute a bond of indemnity to the county of Washington, as the appellees conditioned that the proceeds of the bonds should be applied to the construction of the road through that county, and upon its refusal to execute such a bond the injunction was made perpetual. It is insisted by the company that the chancellor had no power to grant an injunction modifying the judgment or preventing its execution. We do not understand that the judgment of the court is modified, but there is no doubt that the effect of the restraining order is to prevent the judgment from being enforced; and if the relief to which the party is entitled is purely equitable, we see no reason why the chancellor may not interfere and grant relief.

The subscription having been voted by the county and the road located, there was nothing for the county judge to do but to com-

ply with the order of the county court. He made no such defense on behalf of the county as is relied upon by the appellees for relief in the amended petition.

They, as tax-payers of the county, are strictly interested in having a proper application of this large sum of money to be raised by taxation. Their county is between Eminence and Greensburg and the expenditure of this large sum of money for the construction of a road from one end of the county to the other could result in no practical benefit to them, but would be a useless expenditure of money. It is evident, from all the evidence bearing on the solvency of the appellant and its present ability to complete the road, such a distance even as would inure to the benefit of the parties in interest, that a sale of the bonds would result in an entire loss of that much money to the tax-payers of Washington county. These appellees having the tax to pay, come into a court of equity asking a character of relief that could not be obtained in a common-law court, and ask the chancellor to restrain an insolvent corporation from obtaining their money for the purpose of expending it in an enterprise that the proof conduces strongly to show has already proved a failure. The common-law judge will render his judgment for the money, but where by the terms of the agreement the money, when collected, is to be applied to a particular purchase, the chancellor upon a proper state of case often interferes to prevent the wasting of the money by securing its application to the object contemplated by the parties. This corporation, being entitled to receive the money, is but the trustee of the tax-payer, and when it becomes insolvent and is applying the fund to purposes other than that agreed on by the parties, then the chancellor will not hesitate to secure its proper application by granting an injunction or some other remedial process. "If a railroad company ceases to prosecute work, attempts to misapply its means, or attempts any radical change in the character of the enterprise, it may be enjoined from collecting the obligations given to support the original undertaking." *Illinois Grand Trunk Railroad Company v. Cook,* 29 IIllinois 237; *Cumberland & Ohio R. Co. v. Judge of the Washington County Court,* 10 Bush 564.

"In regard to equitable property the jurisdiction of a court of equity is equally applicable. The object of the bill in all such cases is to secure the preservation of the property to its appropriate uses and ends, and whenever there is danger of it being converted to other purposes, or diminished or lost, the interference of a court of equity becomes indispensable. If property in the hands of a trustee

43

for certain specific uses or trusts is in danger of being diverted or squandered to the injury of any claimant having a present or future fixed title thereto, the administration will be duly secured by the court, according to the original purposes, in such a manner as the court may, in its discretion under all the circumstances, deem best fitted to the end. The same rule is applied to executors and administrators, who are treated as trustees of the personal estate of the deceased party." 2 Strong's Eq. Jur. 35.

In the present case the company undertakes to apply the means of the tax-payers of Washington county in accordance with the conditions of the subscription, and when, acting in such a capacity, it undertakes to divert or misapply the fund, or, by reason of its insolvency, is in no condition to invest it to accomplish the object contemplated by the parties, the chancellor will interfere to grant some relief. The mere fact that the company has no available means to complete the road, or is in fact insolvent, will not authorize the granting of a perpetual injunction in favor of a party subscribing stock. Such enterprises are seldom undertaken with means on hand sufficient to insure completion. The money is raised not only by subscriptions, but by loans and mortgages upon the road, and where there is no allegation of fraud or misapplication of the funds the chancellor will hesitate before interfering to prevent the collection of subscriptions. In a case, however, like this, where the money subscribed is to be applied to the construction of a particular part of the road, and where it appears that there is scarcely a probability of completing any other portion of the road, on account of the insolvency of the company, and with the additional fact that portions of the subscription have already been misapplied by the company, or if not that it is now insisting upon its right to divert the interest of the fund, the chancellor ought to interfere and grant some relief. The character of that relief is the most embarrassing question of the case. A very large sum of money has already been expended in making the road bed from Eminence to Greensburg and it would be unfair to the other stockholders, and at the same time a virtual destruction of the corporation, to release the appellants from the payment of the subscription.

Although there is no immediate prospect of raising the means necessary to continue the work, it is by no means improbable that unemployed capital may yet be invested in this great improvement, and if so, the many hundred thousand dollars expended on the work may yet be saved to the stockholder or the construction of the road

at least secured. The chancellor, therefore, should have granted a temporary injunction, reserving the right to permit the issuing of the bonds whenever it is made to appear that there is a reasonable probability of the money being raised to complete the road such a distance as would result in practical benefit to the appellants. If the money can be raised by mortgage or loans, or by contracts with solvent parties, justifying the renewed prosecution of the work with a reasonable prospect of success, the bonds should be directed to be issued, or if a bond is executed indemnifying the tax-payers of the county, conditioned that the bonds and interest will be applied in accordance with the terms of the subscription, and the road completed so as to make it of practical benefit to the county, the chancellor should dissolve the injunction, and for this purpose the case should be retained on the docket.

The agreement of record in the county court, by which the bonds were to be issued when demanded by certain parties named in the order, is of no binding obligation. Neither the company nor the county judge had the power to bind the stockholder or restrict the right of collecting the subscription by any such agreement.

The chancellor must now determine when the bonds are to be issued. Whether or not the proposition to change the gauge of the road so as to make it what is termed a narrow gauge road is such a fundamental change from the original purpose of the corporation in the construction of a railroad as to release the subscriber of stock from his obligation to pay, is a question not necessary to determine. No such proposition has been attempted to be carried into execution, and while there can be no doubt that the road intended originally to be made was not a narrow gauge, we are not prepared to say that it was such a departure from the original plan of construction as to affect materially the contract of subscription. The facilities for the transportation of passengers and freight may be as great on the one road as the other, or at least, in every practical point of view, redounded as much to the interest of the stockholder as if the original plan of construction had been carried out. It is certainly a railroad, although not of the usual gauge, and while no shareholder can be deprived of his rights under the articles of incorporation without his assent, we must be better satisfied as to the effects of the variance between the original object in view and that now contemplated by the company, before passing upon the question.

As to the proper application of Sec. 40, Art. 2, of the state constitution, prohibiting the general assembly from appropriating any

money or creating any debt, exceeding the sum of $100 at any one time, unless the same, on its final passage, shall be voted for by a majority of all the members, and the yeas and nays entered on the journal, without elaborating the question, we have only to say that in the opinion of the court it applies alone to appropriations made in behalf of the state, or where the money appropriated is to be paid out of the treasury of the state. It is a prohibition to the creation of debts against the state, and does not apply to municipalities or corporations. The legislation of the state upon such subjects may have been impolite and morose, but the many judicial decisions of this court recognizing the validity of such enactments, although the constitutional question now made may not have been raised, must be considered as a judicial construction of this constitutional provision.

The judgment of the court below is *reversed* and cause remanded with directions to modify the injunction as herein indicated. The case will be retained on the docket for further action by the chancellor when applied to by the parties. See *Cumberland & Ohio R. Co. v. Judge of Washington County Court,* 10 Bush 564.

R. H. Rountree, W. B. Harrison, for appellant.

George R. McKee, R. J. Browne, for appellees.